UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JAYMAR STANTON ADAMS,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:15-CV-4057-KES<br><br>ORDER GRANTING<br>MOTION TO DISMISS |

Petitioner, Jaymar Stanton Adams, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Docket 1. The government opposes the motion and moves to dismiss. Docket 27. For the following reasons, the court grants the government's motion and dismisses Adams's § 2255 motion.

**BACKGROUND**

On September 10, 2013, Adams was charged with conspiracy to distribute a controlled substance. Criminal Docket (CR Docket) 116. The fourth superseding indictment charged that between December 1, 2008, and July 18, 2012, in South Dakota, Adams and codefendants "did knowingly and intentionally combine, conspire, confederate, and agree together, with others known and unknown to the Grand Jury, to knowingly and intentionally distribute more than 100 kilograms of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846." Docket 216 at 1. Adams hired Randolph Daar to represent him in California, where his property

was searched. Docket 2 at 1. Daar hired Nicole Carper, a Sioux Falls, South Dakota based attorney, to serve as local counsel. *Id.* at 2.

Adams alleges that he received a proposed plea agreement from Daar before his plea hearing. Docket 36-1 at ¶ 3. He alleges he was instructed to sign it and mail it back to Daar, which he did, even though he did not understand the terms of the plea agreement. *Id.*

On November 12, 2013, before his change of plea hearing, Adams met Daar and Carper outside of the courtroom. Adams alleges that Daar and Carper had a disagreement just prior to the change of plea hearing regarding Adams's defense strategy. *Id.* at ¶ 4. This is disputed by both Daar and Carper. Docket 21 at 3; Docket 22 at 5. Adams alleges that Daar told him to answer "yes" to all of the court's questions. Docket 36-1 at ¶ 4. Daar alleges that he told Adams to answer the court's questions truthfully. Docket 21 at 3-4.

During the change of plea hearing, the court asked Adams numerous questions. CR Docket 341. Adams agreed that he discussed the charges against him and his case in general with his lawyers, *id.* at 6: 4-6, he was satisfied with his lawyers' representation and advice, *id.* at 6: 7-10, he read and discussed the plea agreement with his lawyers, *id.* at 6: 12-15, he understood all of the agreement's terms, *id.* at 6: 20-22, and he denied that anyone was forcing or coercing him into pleading guilty. *Id.* at 7: 14-22. Adams said he understood the rights he would lose if he pleaded guilty, *id.* at 8: 7-9, and the possible punishments he faced. *Id.* at 8: 10-9: 5.

The court described Adams's rights, including his right to go to trial and what that would entail. *Id.* at 10: 21-11: 21. He said he understood that he was giving up those rights by pleading guilty. *Id.* The court described to Adams the elements of the crime the government would have to prove if he went to trial, including that the conspiracy to distribute a controlled substance happened in the District of South Dakota and elsewhere. *Id.* at 11: 22-12: 15. Adams admitted he understood what he was charged with and that the government would have to prove those elements if the case went to trial. *Id.*

Adams stated that he read the factual basis statement and he admitted everything in it was true. *Id.* at 12: 16-21. The court then asked Adams:

> [The factual basis statement] says that you personally grew, harvested, and obtained marijuana, illegally distributed marijuana, caused marijuana to be illegally delivered and distributed, paid others for marijuana, and received payments for marijuana, and that you combined shipments of marijuana with other co-conspirators.
>
> The amount that you were involved with in the activity that I just described, was that more than a hundred kilograms of marijuana?

*Id.* at 12: 25-13: 8. Adams answered "yes." *Id.* at 13: 9. The court then stated, "With that additional information, I find there is an independent factual basis for the plea." *Id.* at 13: 10-11.

During the change of plea hearing, the court found that Adams was competent and capable of entering an informed plea, that he was aware of the charges against him, that he was aware of the consequences of the plea, and that the plea of guilty was voluntary. *Id.* at 13: 18-25.

The issue of the conduct Adams was pleading guilty to came up during his sentencing hearing. After Carper questioned the government's witness, a Special Agent with the Department of Homeland Security, the court stated:

> Miss Carper, I guess I'm somewhat confused based on your questions of Agent Scherer. You are implying all the marijuana was for legitimate purposes.
>
> Your client in Paragraph 36, the part dealing with acceptance of responsibility, states that, "Soon the market became flooded with marijuana and not enough dispensaries to sell it. He decided to transport marijuana to South Dakota to sell in order to recoup costs and to help pay the loan on the land. He knew it was illegal to transport the marijuana across state lines."
>
> So I'm trying to figure out if your client is actually accepting responsibility or not. Because if he's now arguing all of the marijuana grown, as shown in the greenhouses in Exhibit 3, were for legitimate purposes, that's contrary to his statement for acceptance of responsibility.

Docket 341 at 26: 5-20.

Carper responded by saying, "I in no way meant to imply or diminish my client's acceptance of responsibility with respect to his knowledge that marijuana that he had grown in California had gone with his full knowledge to South Dakota, and that's why he's here in Federal Court pleading guilty to this charge to you." *Id.* at 27: 10-15.

Later, during the sentencing hearing, the court stated that Paragraph 17 of the Presentence Report contained the following information:

> Sam Pfeifle and Mr. Newell helped Adams at his marijuana grow on Thomas Road, that Sam Pfeifle cloned plants and arranged for trimmers for harvesting, and that that marijuana was then put into heat-sealing packages that were wiped down to remove fingerprints, and that that was then sold as part of this marijuana conspiracy, and that the Defendant showed up at least once per week to check on the operation on Thomas Road.

*Id.* at 29: 8-16. Adams did not object to this information either before or during the sentencing hearing.

Finally, Adams stated during his allocution, "I'm sorry for breaking the law. I knew it was illegal, but did not fully understand the severity for which I could be punished. The decision to bring it to South Dakota is what has brought me here today." *Id.* at 41: 11-15.

On March 25, 2014, the Court sentenced Adams to 60 months imprisonment, four years of supervised release, forfeiture of $50,000, and a $100 special assessment. CR Docket 323. Adams did not file a notice of appeal. Docket 1 at 2 ¶ 8.

Adams filed this motion to vacate, set aside, or correct his sentence on March 9, 2015. Docket 1. The government moves to dismiss Adams' motion. Docket 27.

## LEGAL STANDARD

A § 2255 motion is the "statutory analog of habeas corpus for persons in federal custody." *United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir. 2005) (citation omitted). A federal prisoner may seek relief from his sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. Relief may be granted under § 2255 only for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct

appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (citation omitted).

## DISCUSSION

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). A defendant is also entitled to effective assistance in the decision to plead guilty or not. *Id.* at 364 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

To establish ineffective assistance of counsel, a petitioner must meet the two-pronged standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Id.* This "performance prong" requires a petitioner to show that counsel's representation was deficient and "fell below an objective standard of reasonableness." *Id.* at 687-88. To show deficiency, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Ragland v. United States*, 756 F.3d 597, 599-600 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687). This court must assess "whether

counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Ordinarily, the Eighth Circuit Court of Appeals "consider[s] strategic decisions to be virtually unchallengeable unless they are based on deficient investigation." *Worthington v. Roper*, 631 F.3d 487, 500 (8th Cir. 2011) (quoting *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006)).

"Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "In order to demonstrate prejudice where, as here, a petitioner challenges the validity of his guilty plea, the petitioner must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 687. In other words, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at

693. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

I. **Ineffective Assistance of Counsel Due to Stipulation to Insufficient Factual Basis**[1]

   A. **Performance**

Adams claims that his right to effective assistance of counsel was violated because his attorneys allowed him to plead to an insufficient factual basis. The court finds that the factual basis was sufficient to accept Adams's plea. Therefore, his attorneys were not ineffective when they allowed him to plead guilty.

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11. "This provision is 'satisfied by the existence of sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense.'" *United States v. Frook*, 616 F.3d 773, 776 (8th Cir. 2010) (quoting *United States v. Gamble*, 327 F.3d 662, 664 (8th Cir. 2003)). To make this determination, "[t]he court may consider stipulated facts in a plea agreement along with any other evidence presented at a plea hearing." *Id.*

---

[1] Although Adams originally claimed his trial attorneys were ineffective for failing to move to dismiss the indictment, Docket 2 at 6, he has abandoned that claim. Docket 36 at 9 n.1.
   Adams also filed a supplemental memorandum that discussed his concerns regarding the forfeiture of his property. Docket 8. But Adams did not raise these issues in any subsequent filing or respond to the government's arguments against these claims. Because it appears Adams abandoned these claims, the only remaining claim is ineffective assistance of counsel for allowing Adams to plead guilty with an insufficient factual basis.

8

In *Frook*, the Eighth Circuit Court of Appeals found that the record showed a factual basis for accepting Frook's plea of guilty to using a social security number obtained on the basis of false information. *Id.* He stipulated that he provided false information in an application for a social security number that he used to obtain a credit card. *Id.* At his change of plea hearing, Frook stated that he provided this false information with intent to deceive the credit card company. *Id.* The court found that "Frook's admissions and the accompanying circumstantial evidence thus provide an adequate factual basis for Frook's guilty plea, and the district court did not plainly err in accepting it." *Id.*

The same is true here. Adams admitted during the change of plea hearing that he had read the contents of his written factual basis statement and that everything in the factual basis statement was true. CR Docket 341 at 12: 16-21. The factual basis statement stated:

> Between on or about the summer of 2008 and on or about July 18, 2012, in the District of South Dakota and elsewhere, two or more persons reached an agreement to illegally distribute more than 100 kilograms of marijuana in South Dakota and elsewhere. The Defendant, Jaymar Stanton Adams, voluntarily and intentionally joined the agreement, knowing its purpose. During his involvement, the Defendant personally grew, harvested, and obtained marijuana, illegally distributed marijuana, caused marijuana to be illegally delivered and distributed, paid others for marijuana, and received payments for marijuana.
>
> The Defendant combined shipments of marijuana with co-conspirators Sam Pfeifle, Sean McFarland, Brett McFarland, and others, and distributed that marijuana, or caused it to be distributed in South Dakota and elsewhere. During the course of the Defendant's involvement, marijuana was exchanged for cash,

and the Defendant personally accepted at least $50,000 in cash payments for the marijuana.

All of the above was in violation of 21 U.S.C. §§ 841(a)(1) and 846. The Defendant's involvement in the conspiracy ended when he was arrested in July 2012.

CR Docket 250 at 1-2.

When questioned by the court about the amount of marijuana involved in these activities, Adams admitted that it was more than 100 kilograms. *Id.* at 13: 9. This admission of his actions, and the facts that they involved co-defendants and distribution in South Dakota, provided an adequate factual basis for Adams's guilty plea. Because the factual basis was adequate, Adams's attorneys' decision to allow him to plead guilty was not ineffective.

### B.     Prejudice

Even if Adams could show that his counsel's performance was deficient, Adams cannot show *Strickland* prejudice. " '[I]n order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59). While Adams's complaint states that he answered one question at his plea hearing and that was the crux of his guilty plea, that is not true. *See* Docket 2 at 2 ("The Court asked a single question of the Petitioner . . ."). As explained above, the court asked Adams many questions to ensure that the plea of guilty was voluntary, knowing, and that Adams understood the consequences of his plea. Docket 341. Adams

10

stated that he understood and did not object at any point. He answered some questions yes and others no. Even if he had misunderstood the "100 kilograms" question, he acknowledged that he had read the plea agreement and the factual basis statement, and that the information in both was true.

Adams made similar statements during his sentencing hearing. His attorney specifically claimed that Adams accepted responsibility for sending his marijuana to South Dakota. Docket 341 at 27: 10-15. During the hearing, the court referenced information in the Presentence Report that made it clear that Adams was guilty of conspiracy. *Id.* at 29: 8-16. Adams himself stated at the sentencing hearing that he "knew it was illegal," and "[t]he decision to bring it to South Dakota is what has brought me here today." *Id.* at 41: 11-15. Even if Adams misunderstood the "100 kilograms" question, Adams knowingly pleaded guilty to conspiracy, and he never indicated there was any issue with his understanding of the plea or his counsel's performance.

The record does not support Adams's arguments that he was prejudiced because the plea was involuntary, based on a misunderstanding, based on an insufficient factual basis, or in any other way a product of his attorneys' alleged deficiency. Adams acknowledged his guilt numerous times and at no point raised objections to the information upon which he pleaded guilty and was sentenced or his attorneys' performance. Adams's allegations are contradicted by the record during the change of plea and the sentencing hearings. Therefore, he cannot show prejudice.

11

## II. Evidentiary Hearing

Adams argues the court should hold an evidentiary hearing before ruling on the government's motion to dismiss.

> Section 2255(b) requires an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' No hearing is necessary 'if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'

*Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003)).

Adams argues that he and his attorneys' affidavits conflict. Docket 36 at 12. He states that each party's account differs on the attorneys' advice and representation concerning the plea agreement, the plea hearing, and the allegations in the factual basis statement. *Id*. Adams argues he did not understand the plea agreement and the factual basis statement. *Id*. His attorneys allege that they explained it to him. *Id*.

With regard to the factual basis statement, Adams claims he did not understand that he was admitting he was involved in a conspiracy to distribute marijuana *in South Dakota*. Docket 36 at 8. He claims he was "not involved in any activity in South Dakota or elsewhere with the co-defendants" during the relevant time period. Docket 36-1 at ¶ 6. The record does not support this argument. Even ignoring the fact that he agreed to the truth of the factual basis statement and acknowledged that he understood the plea agreement

12

during the plea hearing, during the sentencing hearing, he stated that he was involved in South Dakota. He stated, "I'm sorry for breaking the law. I knew it was illegal . . . The decision to bring it to South Dakota is what has brought me here today." Docket 343 at 41: 11-15. This statement directly contradicts the argument Adams presents in his § 2255 petition and subsequent filings. Adams does not explain this statement.

Adams relies on *Franco v. United States*, 762 F.3d 761 (8th Cir. 2014), a case in which the Eighth Circuit Court of Appeals reversed the trial court's denial of an evidentiary hearing. *Franco* discusses *Watson v. United States*, 493 F.3d 960 (8th Cir. 2007) and *Koskela v. United States*, 235 F.3d 1148 (8th Cir. 2001), in which the Eighth Circuit reversed dismissals without evidentiary hearings.

In *Watson*, the petitioner claimed he instructed his attorney to file a notice of appeal, but the attorney did not do so. *Watson*, 493 F.3d at 962. The Court of Appeals held that the district court could not make a factual determination about Watson's claim without a hearing. *Id.*

In *Koskela*, the defendant alleged that his trial counsel did not investigate and present his alibi defense. *Koskela*, 235 F.3d at 1149. Koskela submitted affidavits stating his claim and the proposed testimony of his alibi witnesses. The government submitted trial counsel's affidavit stating that Koskela had never mentioned these witnesses. *Id.* The Court of Appeals held that the district court could not find that the defendant's affidavits lacked credibility without an evidentiary hearing. *Id.*

13

The Eighth Circuit likewise reversed the district court's decision to dismiss a habeas petition without an evidentiary hearing in *Franco*. 762 F.3d 761. After reviewing conflicting affidavits, the district court found that trial counsel's affidavit testimony was more credible than the defendant's. *Id.* at 765. The Court of Appeals held that making a factual determination of relative credibility without an evidentiary hearing was an abuse of discretion. *Id.*

Adams's case is distinguishable. The petitioners in *Franco*, *Watson*, and *Koskela* presented affidavits with irreconcilably different versions of the facts. Adams argues that he and his attorneys present different facts in their affidavits. This is technically true, but not in any material way. Adams's affidavit is contradicted by his own statements during the change of plea and sentencing hearings – not the trial attorneys' affidavits. His statements that he knew what he was doing was illegal and knew that his South Dakota connections were what brought him to South Dakota on federal charges directly contradict his argument that he did not understand the plea agreement or the factual basis statement.

The court finds that Adams's "allegations cannot be accepted as true because they are contradicted by the record[ and] inherently incredible . . . ." *Walker*, 810 F.3d at 580 (quoting *Sanders*, 341 F.3d at 722). Therefore, an evidentiary hearing is not required.

### III. Certificate of Appealability

Before denial of a § 2255 motion may be appealed, a petitioner must first obtain a certificate of appealability (COA) from the district court. *Miller-El v.*

14

*Cockrell*, 537 U.S. 322, 335-36 (2003). "[T]he petitioner seeking a COA must show both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Adams argues that "reasonable jurists could disagree as to whether his attorneys' performance was deficient in stipulating to a factual basis that was insufficient to prove a violation of 21 U.S.C. §§ 841(a) and 846." Docket 36 at 13. The court finds that a reasonable jurist could disagree with this court's conclusions. Consequently, a certificate of appealability is issued on the issue of whether his trial counsel was ineffective for advising him to stipulate to an inadequate factual basis for his guilty plea.

## CONCLUSION

Adams argues that Daar and Carper violated his right to effective assistance of counsel under the Sixth Amendment by permitting him to plead guilty with an insufficient factual basis. He argues that he was not involved in South Dakota or with co-defendants. The record contradicts this argument. His attorneys were not deficient because the factual basis was sufficient. Additionally, Adams cannot show that absent his attorneys' alleged deficiency, he would not have pleaded guilty and would have gone to trial. Therefore, he cannot show *Strickland* prejudice. Because his allegations are contradicted by

the record and inherently incredible, the court dismisses his petition without an evidentiary hearing.

      IT IS ORDERED that

1.     The government's motion to dismiss (Docket 27) is granted.
2.     Adams' Motion to Vacate, Set Aside, or Correct his sentence (Docket 1) is dismissed.
3.     A certificate of appealability is issued on the issue of whether Adams's trial counsel was ineffective for advising him to stipulate to an inadequate factual basis for his guilty plea.

Dated June 17, 2016.

                        BY THE COURT:

                        */s/ Karen E. Schreier*
                        KAREN E. SCHREIER
                        UNITED STATES DISTRICT JUDGE